**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Hotel & Restaurant & Bar Employees Fringe Benefit Funds,

Plaintiff,

Civil File No. 01-873 (MJD/RLE)

v.

**MEMORANDUM AND ORDER**

Mui Trong, as mother and natural guardian of Peter Truong,

Defendant.

---

This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons that follow, the Court grants Defendant's motion and denies Plaintiff's motion.

**BACKGROUND**

The parties have stipulated to the following facts. Minor Peter Truong was born on December 31, 1986. His mother is Mui Trong ("Defendant"). Peter and Mui Truong are of Vietnamese and Chinese descent. Mui came to the United States as an adult refugee. Mui's knowledge of English is very limited. She must use a translator for her legal matters and other important affairs. On August 6, 1993, Peter was 6 years old. He lived at 326 South 16th Avenue East in Duluth, Minnesota. Down the hill from his residence is a street called "South Street," which abuts the freeway in that area. On the morning of the accident, Peter left his house and crossed the Avenue to try to play with some friends. He was not able to

FILED FEB 1 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD FEB 1 2002
DEPUTY CLERK

do so, and played in the yard adjoining South Street between 16th Avenue East and 15th Avenue East. At some point, he noticed a troll doll across the street from him. He then entered South Street to retrieve the doll. As he did so, he was struck by a garbage truck driven by James King Hall, Jr., and owned by TGR Sanitary Services of Duluth, Minnesota.

There are various disputes regarding how the accident occurred, including among other matters, the visibility of the driver and whether the driver should have anticipated Peter's entry into the street. When Peter was struck by the garbage truck, his right foot was dragged along the pavement by the truck's wheel for a distance of some feet. The skin and other soft tissues were abraded from the top of his foot.

As a result of this accident, Peter has had several surgeries. The top of his foot remains severely disfigured by a graft of skin and fat which was placed there to replace the damaged tissue. Although he can run and walk without a dramatic limp, he still does not quite have a normal gait. He has scars on his thigh and his back from the donor sites of the grafts which were used on his foot. His impairments affect his activities. He claims to have emotional distress as a result of this disfigurement. It appears that further surgery may be required on his foot as his foot grows and he matures.

Following mediation, a settlement has been reached with the driver, the sanitary service and its insurer, State Farm Insurance. The amount of the settlement is $150,000.00. There has been a Petition filed for approval of the settlement in Minnesota District Court in the Sixth Judicial District in Duluth, Minnesota. The Petition for settlement includes

payment to Mui Truong and some sums from that settlement, payment of attorney's fees and costs of the settlement, and placement of the remainder of the settlement either in a Settlement Preservation Trust for Peter Truong, or payment by way of a Structured Settlement.

Pursuant to an agreement between the Plaintiff and Defendant in this matter, $30,000.00 of the $150,000.00 settlement has been placed in an interest-bearing Escrow Account with Boyd Agnew Dryer & Storaasli, Ltd., attorneys for the Truongs, pending resolution of the underlying lawsuit.

The parties agree that the Truongs have not been fully compensated by this settlement. The medical expenses for Peter related to this accident and injuries sustained on August 6, 1993, exceed $45,000.00. Of those medical expenses, the garbage truck's No-Fault Insurance paid $20,000.00. Mui herself has paid for some of the medical expenses not covered by the insurance. The Hotel & Restaurant & Bar Employees Fringe Benefit Funds also paid $25,012.14 in medical benefits. The Hotel Plan claims a subrogation interest in the sum of $25,012.14 in the settlement proceeds. The Truongs deny that the Plan has a valid subrogation interest in that sum. The dispute between the parties regards the nature and priority of any subrogation interest, not regarding its amount, if there is a subrogation interest in the settlement proceeds.

Plaintiff Hotel & Restaurant & Bar Employees Fringe Benefit Funds ("Funds") is a multi-employer, jointly-trusted fringe benefit plan created and maintained pursuant to

Section 302(c)(5) of the Labor Management Relations Act of 1947 ("LMRA"), as amended (29 U.S.C. § 186(c)(5)). The Fund is administered in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended (29 U.S.C. § et seq.), and is exempt from federal income taxation pursuant to Internal Revenue Code Section 501(c)(9). The Fund is governed by and administered pursuant to the terms of the Agreement and Declaration of Trust establishing the trust fund ("Trust Agreement") and a Plan Document and Summary Plan Description ("Plan"). An employee of an Asian restaurant in Duluth, Minnesota, Mui was a participant in the Fund as provided under the terms of the Trust Agreement and Plan. The Fund also provided coverage for Peter as Mui's dependent.

On January 4, 1994, Mui signed a "Request for Payment and Subrogation Assignment" at the request of the Plan. That form was given to Mui by the Plan with the instruction that she had to sign the form before the Plan would pay medical bills relating to the accident. The Plan claims that the Plan and Plan terms that were in effect on the date of the accident of August 6, 1993, specifically the relevant subrogation language, are contained in Paragraph X11, pages 39 and 40 of the Plan. The Plan represents that there were no intervening Plans or changes in language regarding the subrogation provisions between August 6, 1993 and the present time, apart from the changes indicated in the July 1, 1999 Plan. Mui claims that she did not receive a copy of the Plan before the time of the accident or before the time she signed the "Request for Payment and Subrogation Assignment" on

January 4, 1994. Mui asserts that the only notice of the nature of Plaintiff's subrogation interest before Spring 2001, was the notice given in the "Request for Payment and Subrogation Assignment" executed on January 4, 1994. The Plan represents that it believes Mui was given a copy of the Plan before those times.

On May 7, 2001, Mui, on behalf of Peter, submitted for filing a Petition for Approval of the Settlement to a state court administrator. She also filed in state court a Notice of Motion and Memorandum to allow settlement without payment of the subrogation interest, and served a copy on the Plan. On May 18, 2001, the Plan filed the underlying action in federal court. Both parties have moved for summary judgment and waived oral argument. The Court sought additional briefing from the parties in light of the Supreme Court's recent decision in Great-West Life & Annuity Ins. Co. v. Knudson, 122 S. Ct. 708, 2002 WL 15399 (Jan. 8, 2002).

**DISCUSSION**

**A. Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). As the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure

the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quotation omitted).

**B. ERISA § 502(a)(3)**

Citing the recent Supreme Court decision in Great-West Life & Annuity Ins. Co. v. Knudson, 122 S. Ct. 708, 2002 WL 15399 (Jan. 8, 2002) and reiterating arguments made in her motion for summary judgment, Defendant argues that the underlying action was not properly commenced pursuant to ERISA because Plaintiff, the fiduciary, seeks legal not equitable relief. To the extent that Defendant characterizes this issue as dispositive of this case, the Court will assume that Defendant has waived her argument for Younger abstention.

Plaintiff argues that the underlying action properly states a claim because the parties signed a Stipulation on June 22, 2001, agreeing that:

> 11. Jurisdiction of this action is based on § 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(e)(1), conferring jurisdiction on the District Courts to hear civil actions brought by a fiduciary pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).
>
> 12. Venue is appropriate in this District Court pursuant to §502(e)(2) of ERISA, 29 U.S.C. § 1132(3)(2) in that this is the District in which the Fund is administered.

(Stipulation ¶¶ 11 and 12).

The Court disagrees with Plaintiff's reasoning. ERISA §502(a)(3) authorizes a civil action:

> . . .by a . . . fiduciary (A) to **enjoin** any act or practice which violates . . . the

> terms of the plan, or (B) to obtain other appropriate **equitable** relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added). Plaintiff's Complaint contains two counts: (1) Count 1 for Violation of Plan Terms; and (2) Count 2 for Attorney's Fees. (Compl. at 4.) In Count I, Plaintiff seeks reimbursement of $25,012.14 "as a result of Mui Truong's breach of the terms of the Plan." (Compl. ¶ 20.) In the prayer for relief, in addition to attorney's fees, Plaintiff seeks "an award of $25,012.14 in **damages**." (Id. at 5, ¶ 1) (emphasis added). On the face of the Complaint, Plaintiff asserts no claim to enjoin a practice or for equitable relief against Defendant.

Recently in Great-West, petitioners sought an injunction to compel the payment of money past due under the reimbursement provision of respondents' ERISA Plan, or alternatively, restitution for money past due. 122 S.Ct. 708, 2002 WL 15399. The Supreme Court held that because petitioners in that case sought legal relief, or the imposition of personal liability on respondents for a contractual obligation to pay money, ERISA §502(a)(3) did not authorize the action. Id. at *9. Accordingly, the Supreme Court affirmed summary judgment in favor of respondents. Id. The Supreme Court made clear that:

> A claim for money due and owing under a contract is quintessentially an action at law. Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of a legal duty. And [m]oney damages are, of course, the classic form of legal relief.

Id. at *4 (citations and quotations omitted). The Supreme Court discusses at length petitioner's claim for restitution and when such a claim may be characterized as an "equitable" versus a "legal" remedy. Id. at *6-*9. But see id. at *10-*11 (Stevens, J., dissenting), *11-*18 (Ginsburg, J., dissenting.) However, this Court need not reach that issue or discuss that analysis at this time. Unlike the petitioners in Great-West, Plaintiff here has not pled an action for specific performance or restitution. In fact, Plaintiff has not sought "to enjoin" Defendant or "equitable" relief against Defendant at all. Plaintiff's Complaint quite plainly seeks money damages based on a contractual obligation, or legal relief.

Furthermore, the parties' Stipulation does not bear on this issue. Whether this Court has jurisdiction pursuant to ERISA §502(e)(1) over claims arising under ERISA §502(a)(3) is a separate and distinct question from whether a claim has been properly asserted under ERISA §502(a)(3). The Court cannot construe the parties' Stipulation any broader than the language it contains, and that language does not waive argument on whether a claim has been properly asserted under ERISA §502(a)(3). Accordingly, because Plaintiff in this case is seeking legal relief, Plaintiff has failed to state a claim under ERISA §502(a)(3).

**CONCLUSION**

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 13) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Clerk Doc. No. 8) is **GRANTED** to the extent that Plaintiff has failed to assert a claim for equitable relief under ERISA §502(a)(3).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: 1-31, 2002

Michael J. Davis
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

*This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.